WILLIAM R. BURKE *vs.* ESTATE OF PATRICK BURKE (ELIZABETH A. FREELAND'S APPEAL FROM COMMISSIONERS).

Third Judicial District, Bridgeport, October Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Ultimate conclusions of fact drawn by the trial court will not be disturbed on appeal unless the subordinate facts are inconsistent therewith.

Personal services in planting, raising and harvesting crops for the joint or common benefit of the family, rendered by one of several adult children who, with their aged father, live together as one household upon his farm, are presumably gratuitous, in the absence of an express agreement of the father to pay therefor; and the same is true of moneys expended by such son for grain, feed, and labor performed on the farm, especially if the father, in operating the farm and in maintaining the entire family, spent several times the amount contributed by the son.

Argued October 30th—decided December 15th, 1917.

APPEAL by an heir at law from the allowance by commissioners upon the intestate estate of Patrick Burke of Danbury, deceased, of a claim presented against his estate by the plaintiff, taken to and tried by the Superior Court in Fairfield County, *Reed, J.;* facts found and judgment rendered disallowing the claim, and appeal by the plaintiff. *No error.*

*George Wakeman,* for the appellant (plaintiff).

*Thomas M. Cullinan,* for the appellee (Elizabeth A. Freeland).

RORABACK, J. Patrick Burke, aged seventy-five years, died at Danbury, Connecticut, June 14th, 1915, intestate, leaving an estate valued at about $15,000.

William R. Burke, the present claimant, was a son of the deceased. William claims to recover from his father's estate $4,850. Of this amount, $2,160 was for personal services rendered; $1,250 for the use of horses, wagons and the like; and $1,440 for money paid and expended for grain, feed and materials, and for labor performed on the Burke farm.

The finding discloses, among other things, that subsequent to the death of his wife in 1907, Patrick Burke continued to live in his home upon his farm in Danbury. The following named children continued to live with him: Mary A. Lavin, a widowed daughter; the claimant, William R. Burke, an unmarried son; Emma Frances Burke, an unmarried daughter, all of whom were adults; and Thomas Lavin, a son of Mary A. Lavin. During a part of said period Henry Burke, a married son, also resided with him. All of them lived together as one family.

Patrick Burke never entered into any express agreement, either oral or written, with William, to pay him for services rendered or for money expended by him, nor were any services rendered or money expended under such circumstances as would imply such an agreement on the part of the deceased. William never told his father, and his father never understood, that he (William) intended to charge for the use of the team of horses owned by William, or for his services while working upon the farm. The services rendered by William, and the money paid, laid out and expended by him, were such as were reasonably to be expected from one standing in the relation of parent and child. Substantially all of such services as were rendered by the son in the planting, raising and harvesting of crops upon the lands of Patrick, were done for the joint or common benefit of himself, his adult brothers and sisters, and his father, and were not for the special

benefit of the father. The work of planting, raising and harvesting the crops raised upon the land of Patrick Burke, during the six years preceding his death, was performed by men hired and paid by William.

At this time William lived in the dwelling-house on Patrick Burke's lands, ate at the common table, used the barns and outbuildings for housing his livestock, and used the products of the land for the maintenance of his livestock, without paying anything therefor except such services as he may have rendered or such moneys as he may have expended in the cultivation and care of the lands. For a portion of this time William was a teamster and employed with his team on municipal and other work. Patrick Burke derived no benefit or advantage from any services rendered or moneys expended by William, other than the same advantage and benefit enjoyed by William himself, and by his adult sisters and brother and nephew, who lived on his lands. William was not induced to render such services or expend money by any statement made or promise given by Patrick Burke to pay him for it.

The appellant makes no complaint that the facts found are not sustained by the evidence. He bases his objections on the deductions drawn by the court below from the facts disclosed by the finding. Ultimate conclusions of fact, drawn by the trial court, will not be disturbed on appeal unless the subordinate facts are inconsistent therewith. Such is not the present case.

In *Cotter* v. *Cotter*, 82 Conn. 331, 73 Atl. 903, this court held that "from the rendition of services and their voluntary acceptance the law will ordinarily imply a promise upon the part of the recipient to pay for them; but where the services are rendered by members of a family, living as one household, to each other, no such implication arises. In order to recover for such services the plaintiff must affirmatively show

either an express contract to pay, or that the circumstances under which they were rendered were such as give rise to a reasonable and proper expectation that there would be compensation."

Applying these principles of law to this case, it is apparent from the character of the services rendered and the circumstances under which they were performed, as disclosed by the record, that no promise to pay can be implied for the services rendered by the son William.

But the claimant contends that the rule of law applicable to his claim for services does not apply to his claim for money paid, laid out and expended. It is insisted that as a general rule, if one has paid money for the benefit of another which the latter was legally bound to pay, and has done so for a reasonable cause and not officiously, he can recover the amount of the party for whose benefit it was paid.

This proposition of law is undoubtedly correct, but the difficulty is that it is not applicable to the circumstances of the case now before us. It was not enough for the claimant, William, to show, as the trial court found, that he had paid $1,440 for labor performed upon his father's farm during a period of six years prior to his father's death. These parties were all living together upon this place as father and children, and receiving mutual benefits for the services which they rendered and the expenditures which were made. William, the son, well knew the legal status of the different members of the family. He could not rely upon any apparent legal and necessary dependence upon the father, of those with whom he was living. They were adults and capable of providing for themselves. It certainly cannot be said that these expenditures made by William were for the individual benefit of his father, nor for any one whom the father was

legally bound to maintain. It is to be noticed that the trial court has found that the deceased, Patrick, during the six years before his death, expended about $5,500 which was largely used in the operation of his farm and in the support of the entire family.

From this and other facts which are fully set forth in the finding, the law cannot imply an agreement to pay, but will presume that these payments by the son were gratuitous, or that, at least so far as the father was concerned, William had been fully compensated for the money expended, by that which he received in his support and from the products of the farm.

There is no error.

In this opinion the other judges concurred.